UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER E. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00217-JMS-MJD |
| | ) | |
| J. FLOYD, | ) | |
| MITCHELL, | ) | |
| PHILLPS, | ) | |
| GORDY,[1] | ) | |
| SINSERE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

For the reasons explained in this Order the defendants' motions for summary judgment, dkts. [56] and [76], are **granted**.

**I. Background**

Plaintiff Christopher Anderson's claims arise out of a five-day period when he was housed at the Marion County Jail (the "Jail"), while awaiting a post-conviction relief hearing. Dkt. 77-1 at 8-9. Mr. Anderson has returned to the Jail routinely, every 90 days, since 2011. His routine is to take his medication carrier along with his personal medications with him. *Id.* at 39. On August 3, 2018, Mr. Anderson was transferred from the Pendleton Correctional Facility ("PCF") to the Jail. He remained at the Jail until August 8, 2018. *Id.* at 8-9. Mr. Anderson alleges that while he was housed at the Jail, he was not given access to the medications that he brought with him from PCF for his tooth pain and skin psoriasis. Dkt. 2; dkt. 14.

The Screening Order of May 23, 2019, summarizes Mr. Anderson's allegations:

---

[1] The **clerk is directed** to update the docket to reflect that defendant previously identified as "Gordan" is Wilbert Gordy.

> The next day [August 4, 2018], he was not given his medications, and when he asked for them, he was told to fill out medical forms. Mr. Anderson asked the floor officers and Deputy to call medical because he was itching badly but they said there was nothing they could do. Mr. Anderson scratched the skin off his leg because of the itching. Mr. Anderson identifies the officers who would not call medical as Officers J. Floyd, Mitchell, Sinsere, Gordan, and Deputy Phillips.

Dkt. 14 at 2. The Court determined that Mr. Anderson's Eighth Amendment deliberate indifference to serious medical needs claims against defendants Phillips, Floyd, Mitchell, Gordy, and Sinsere could proceed as pled. *Id.* at 3.

Four of the defendants, Phillips, Floyd, Gordy, and Sinsere, filed a motion for summary judgment on April 6, 2020. Dkt. 56. Mr. Anderson filed his response in opposition to this motion on April 15, 2020. Dkt. 63. Defendant Mitchell filed his own motion for summary judgment on June 9, 2020, and Mr. Anderson filed his response in opposition on June 25, 2020. Dkts. 76 and 81. The defendants did not file a reply.

## II. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters

stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

### III. Material Facts

Mr. Anderson testified that he was diagnosed with psoriasis in 2010, while at PFC. Dkt. 77-1 at 13. On August 3, 2018, when Mr. Anderson was transferred to the Jail, he brought with him several medications for his condition including coal tar shampoo, Minerin cream, betamethasone, and pain medication for his tooth.[2] *Id.* at 11. Mr. Anderson's psoriasis affects only certain areas of his body, specifically his scalp, legs and genitals. *Id.* at 16. He testified that he still has this condition, and it still flares up and itches sometimes, but it has not spread to other areas of his body. *Id.* at 16-17. When Mr. Anderson arrived at the Jail, he testified his psoriasis had flared up on "his [right] leg and privates," and he had taken medication for it that morning before arriving at the Jail. *Id.* at 17-18. Mr. Anderson stated when his skin itches, and he uses the medications, he does not have to scratch his skin. *Id.* at 47-48.

Upon his arrival at the Jail, a nurse conducted an initial health screening of Mr. Anderson, and he discussed his medications with her. *Id.* at 18. Mr. Anderson did not get his medications at the screening; he testified that the nurse "said I will get them like I always get." *Id.* On August 4, 2018, Mr. Anderson still had not received his medications and began to request assistance from the named defendants in this action. *Id.* at 18-19.

The Jail's inmate handbook provides inmates with medical and health information and defines the role of deputies regarding healthcare requests. *See* dkt. 77-2 (Marion County Jail Inmate Handbook, effective April 17, 2018). In relevant part:

> If you believe that you or any other inmate is in need **of EMERGENCY MEDICAL TREATMENT**, notify a deputy or staff member immediately.

---

[2] Mr. Anderson brought a pain reliever with him to the Jail. It was given to him to provide relief while he waited for a tooth filling. Dkt. 77-1 at 15. There is no evidence, however, that he was concerned with tooth pain while at the Jail or that he told any of the defendants that he had tooth pain. Instead, he specifically attributes the injury he suffered at the Jail to the denial of the medications used to treat his skin condition.

> Routine medical, dental, and mental health services are available to all inmates at the jail. Inmate Health Care Request forms are available from mailroom staff or from a medical cart nurse. Inmates must complete a Health Care Request form . . . . The Health Care Request form will be given to the nurse during one of the three daily medication rounds or may be given to other medical staff if available. **Deputies cannot and will not accept Health Care Requests**.
>
> **Jail medical, dental, or mental health staff** will screen each Health Care Request, **schedule an appointment** with the appropriate provider, and **monitor all prescribed medications and treatments.**

*Id.* at 5 (emphasis in original and emphasis added).

All of the defendants have attested that their duties at the Jail consisted of "maintaining floor security, escorting inmates to and from various places as needed, assisting with laundry, doing block checks, taking food orders, and assisting the jail nursing staff with their medical passes." Dkt. 57-2 at 1-2; dkt. 57-3 at 1-2; dkt. 57-4 at 1-2; dkt. 57-5 at 1-2; dkt 77-2 at 1. Further, the defendants describe the role of jail deputies, and this role excludes personally obtaining medication to give to inmates or "to ask the medical staff about specific medical information pertaining to an inmate." *Id.* The defendants attested that if an inmate requests medical assistance, the deputies are to "direct the inmate to submit a healthcare request from to medical staff when they make their rounds" but that deputies, in accordance with the Jail inmate handbook, are not allowed to accept these healthcare request forms from the inmates. *Id.* The defendants attested that Mr. Anderson did not show them the skin rash that affected his legs and genitals, and thus, they were not aware of any "medical emergency." *Id.*

### 1. Deputy Mitchell

Deputy Mitchell was employed at the Jail between April 2017 and January 2019, and he was working shifts during the time Mr. Anderson was housed there. Dkt. 77-2 at 1. Mr. Anderson testified that on August 4, 2018, he spoke with Deputy Mitchell while he was walking with a nurse. Dkt. 77-1 at 21. Mr. Anderson "stopped the nurse and asked her if she has any medication for

5

[him]." *Id.* The nurse told him she did not have medication for him and asked him about his issue, and Mr. Anderson informed her that he was having a psoriasis outbreak. *Id.* He testified that Deputy Mitchell reiterated that the nurse had no medication for him and when he asked him to call a supervisor, he stated if the nurse could not help him, there was nothing further he could do. *Id.* 21-22.

On August 5, 2018, Deputy Mitchell passed Mr. Anderson's cell again with the nurse, and Mr. Anderson was "ready to show the nurse" the rash on his legs and genitals. *Id.* at 26. Mr. Anderson stated that because the nurse was female, he would show Deputy Mitchell. *Id.* Deputy Mitchell stated, "No, you're not going to show me." *Id.* Mr. Anderson stated he showed the nurse his leg through the bars of the cell." *Id.* at 26-27. The nurse stated she would put in a referral for him to see the doctor, but that Mr. Anderson needed to submit a healthcare request form. *Id.* at 27. Deputy Mitchell and the nurse then walked to the next cell. *Id.*

### 2. Deputy Floyd

Deputy Floyd has been employed with the Jail since September 2017, and he was working shifts during the time Mr. Anderson was housed there. Dkt. 57-2 at 1. Mr. Anderson testified that on August 4, 2018, he asked Officer Floyd to assist him with calling a nurse to see him and to let the main nurse know he needed his medication. Dkt. 77-1 at 19-20. He stated that Officer Floyd told him that if the nurse could not help him, there was nothing that he could do and walked away. *Id.* This appears to be the only interaction Mr. Anderson had with Officer Floyd, as he did not interact with him over the next three days. *Id.* at 28, 44.

### 3. Deputy Gordy

Deputy Gordy has been employed with the Jail from April 2016 to August 2018, and he was working shifts during the time Mr. Anderson was housed there. Dkt. 57-5. On August 4, 2018,

6

Mr. Anderson stated he asked Officer Gordy to get the nurse because he had "a breakout on [his] privates and everywhere[.]" *Id.* at 24. Officer Gordy was under the impression that Mr. Anderson already had his medication. *Id.* Mr. Anderson explained to Officer Gordy that he did not have his medication and that the nurse did not deliver it to him like usual. *Id.* He may have spoken with Officer Gordy again the next day, but he never received any follow up. *Id.* at 28.

### 4. Deputy Phillips

Deputy Phillips has been employed with the Jail since April 2004, and he was working shifts during the time Mr. Anderson was housed there. Dkt. 57-3 at 1. Mr. Anderson spoke with Officer Phillips on August 4, 2018 and asked him to assist him with getting his medication. Dkt. 77-1 at 22. Officer Phillips told him that the nurse said she did not have any medication for him, and that there was nothing he could do. *Id.* Mr. Anderson asked Officer Phillips to call a supervisor, and he responded that "he will see." *Id.* at 23. The next day, Mr. Anderson stated he had the same conversation with Officer Phillips. *Id.* at 25. Mr. Anderson stated he did not receive any help. *Id.*

### 5. Deputy Sinsere

Deputy Sinsere has been employed with the Jail since October 2017, and he was working shifts during the time Mr. Anderson was housed there. Dkt. 57-4 at 1. On August 4, 2018, Mr. Anderson spoke with Officer Sinsere while he was bringing food trays asking him if he could get the nurse to come to see him because he needed his medication. *Id.* at 23. Officer Sinsere responded that he would see, but Mr. Anderson stated that nothing happened after that. *Id.* at 23-24. He might have spoken to Officer Sinsere the next day, but he did not receive any follow up. *Id.* at 28.

### 6. Healthcare Request and Doctor Visit

On August 6 and 7, 2018, Mr. Anderson did not have any interactions with the defendants. *Id.* at 28. Rather, he testified that he "laid in bed that day." *Id.* at 29. Mr. Anderson submitted a

7

healthcare request form on August 6, after he was told by a nurse that the medical staff did not have the healthcare card he filed out during intake. *Id.* at 30, 54. Mr. Anderson's request was deemed as "routine." *Id.* at 54. Mr. Anderson testified that he continued to request help from anyone who walked by his cell; the nurses or medical staff came around three to four times a day. *Id.* at 40-41, 45.

On August 8, 2018, Mr. Anderson was examined by a doctor who stated that he should have been seen and that he had a psoriasis flare up and prescribed him medication. *Id.* at 37-38. However, he never received the medication because he left the Jail for PCF the following day. *Id.* at 38.

### IV. Discussion

#### A. Deliberate Indifference Standard

Mr. Anderson asserts an Eighth Amendment deliberate indifference claim against the defendants. At all times relevant to his claims, he was a convicted offender. Accordingly, his medical treatment and conditions of confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining

whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). The defendants admit for purposes of this motion that Mr. Anderson's psoriasis is a serious medical condition, as that term has been interpreted under the Eighth Amendment. Dkt. 58 at 11; dkt. 78 at 9. The defendants argue, however, that they did not display deliberate indifference to such condition.

"[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Bd. v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted).

Mr. Anderson argues that because defendants denied him assistance in obtaining his medication, he suffered from the pain of "severe itching, pilling and burning skin[.]" Dkt. 63 at 5; *see also* dkt. 81 at 6-7. Mr. Anderson contends that because the deputies "refused to contact anyone with the authority to provide him with his medication," they were deliberately indifferent and are not entitled to qualified immunity. Dkt. 63; dkt. 81. However, the defendants are non-medical professionals, and while they may be notified by inmates of needs for "emergency medical treatment," they are not tasked with accepting or screening healthcare requests, triaging medical conditions, or scheduling appointments for inmates to see medical providers. Dkt. 77-2 at 5. Nor do their duties include obtaining medication for inmates or asking medical staff about an inmate's medical care. *Id.* at 2. Though Mr. Anderson contends that he was experiencing a medical emergency because he scratched off his skin, he testified that he did not think it was "life threatening." Dkt. 77-1 at 46. Mr. Anderson's testimony is consistent with that of the defendants'

9

affidavits that he did not show any of the defendants the rash on his legs or genitalia. Further, Mr. Anderson did not speak with the defendants to raise additional complaints for two full days while he was housed at the Jail which undermines his assertions that he was experiencing a medical emergency. Mr. Anderson's complaints of the rash and his severe itching, while painful, do not rise to the level of an emergency so obvious to a deputy or layperson, to warrant an imminent emergency response.

Moreover, Mr. Anderson had been in communication with the medical staff during his initial intake, had spoken with nurses on two occasions after intake as they conducted floor rounds with Deputy Mitchell, followed the nurse's instructions to submit a healthcare request form, and was scheduled to see a doctor within four days of not receiving the medications for his skin. In other words, Mr. Anderson was able to contact medical staff about his needs directly. "Non-medical prison officials are generally entitled to rely on the expertise of medical personnel." *Mitchell v. Richter*, 2017 WL 752162, at *10 (E.D. Wis. Feb. 27, 2017) (citing *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("'If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Prison officials can be liable for deliberate indifference when "they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008) (quoting *Spruill*, 372 F.3d at 236). "If a non-medical prison official does not ignore the inmate but instead investigates the inmate's complaint and refers them to the appropriate medical staff, his duty is at an end." *Mitchell*, 2017 WL 752162 at *10.

In this case, the defendants were aware that Mr. Anderson had spoken with nurses and determined that if the nurses could not help him, there was nothing more they could do to get him the medication he required. Mr. Anderson testified that the deputies "came with the nurses," and he felt like they "did their job wrong because they didn't help" him. Dkt. 77-1 at 35. The defendants argue that in the absence of a medical emergency, deputies do not have training to participate in medical care beyond directing the inmate to submit healthcare request forms. Dkt. 58 at 12-14. The evidence reflects that they reasonably relied on medical professionals to provide appropriate treatment. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (grievance counselor responded reasonably by investigating the situation, making sure medical staff was monitoring and addressing the problem, and reasonably deferring to medical professional's opinions). The defendants are therefore "insulated from liability because [they] responded reasonably to [the prisoner's] complaints." *Id.* at 1011 (internal quotation and citation omitted). Given Mr. Anderson's direct access to medical providers, there is no evidence that the defendants were aware of excessive risk to his health and that they disregarded that risk. In the absence of a constitutional violation, the defendants are entitled to summary judgment in their favor.

**B. Qualified Immunity**

The defendants also argue that to the extent Mr. Anderson's constitutional rights were violated, they are entitled to qualified immunity. Dkt. 58; dkt. 78. Qualified immunity protects government officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). Analysis of the qualified immunity defense requires a consideration of: (1)

whether the plaintiff's constitutional rights were violated and (2) whether the right was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

For the reasons addressed above, however, there was no constitutional violation, so a qualified immunity defense is not necessary. *Much v. Vill. of Oak Brook*, 650 F.3d 1053, 1057-58 (7th Cir. 2011).

## V. Conclusion

It is troubling that Mr. Anderson did not receive his necessary medications while incarcerated at the Jail. However, no reasonable fact-finder could conclude that the defendants, deputies Mitchell, Floyd, Phillips, Gordy, or Sinsere, were deliberately indifferent to Mr. Anderson's medical condition. Accordingly, the defendants' motions for summary judgment, dkt. [56] and [76], are **granted**.

**IT IS SO ORDERED.**

Date: 3/18/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER E. ANDERSON
870077
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Daniyal M. Habib
OFFICE OF CORPORATION COUNSEL
daniyal.habib@indy.gov

Andrew Scheil
OFFICE OF CORPORATION COUNSEL
Andrew.Scheil@indy.gov